UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| AMBER K. BRANT, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:23-CV-179-DCLC-JEM |
| CLIFFORD TRESSLOR, SGT. ODOM, SGT. MULVANE, LT. WIDNER, SGT. DIXON,[1] MAGOR GARCIA, and WARDEN STEVEN ANDREWS, | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff, a transgender Tennessee Department of Correction ("TDOC") prisoner housed in the Northeast Correctional Complex ("NECX"), has filed a pro se complaint for violation of 42 U.S.C. 1983 alleging that Defendants violated her Eighth Amendment rights by failing to protect her[2] [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 2]. For the reasons set forth below, Plaintiff's motion will be **GRANTED**, her request for declaratory relief will be **DISMISSED**, and this action will proceed only as to Plaintiff's claim against Defendant Tresslor in his individual capacity.

**I. FILING FEE**

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* that she cannot pay the filing fee. Accordingly, that motion [*Id.*] is **GRANTED**.

---

[1] Plaintiff sometimes spells this Defendant's name as "Dixion" [*See*, *generally*, Doc. 1]. However, the Court will spell it as "Dixon," as this is the spelling Plaintiff uses in the style of her complaint [*Id.* at 1].

[2] As Plaintiff uses female pronouns to refer to herself [*Id.* at 6–20], the Court also does so.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in her inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2). To ensure compliance with this procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at Plaintiff's current facility and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow her if she is transferred to another correctional facility.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules

of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive a PLRA initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim under 42 U.S.C. § 1983 requires a plaintiff to show that she was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983.

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

### B. Allegations

Plaintiff summarizes Defendants' NECX jobs as follows:

1. Defendant Tresslor is the Unit Manager for units 7, 8, 9, and 10. In this role, "[h]e is responsible for the daily operations of these units, [] for supervising prison staff working in [these] units, [for] maintaining inmate safety and security, and [for] responding to inmate request[s]" [Doc. 1 p. 3];

2. Defendants Odom and Mulvane are Sergeants for Units 7, 8, 9, and 10. They "[are] responsible for conditions and operations at the [NECX]." They are also responsible for supervision of prison staff in these units, "maintaining inmate safety and security," and "responding to inmate request[s] and emergency situation[s][,] such as inmate-on-inmate assaults" [*Id.* at 3–4];

3. "Defendant Widner is a Lieutenant[,]" and he "is responsible for conditions and operations[,]" supervision of officers and staff, "maintaining inmate safety and security, and responding to inmate request[s] and emergency situation[s] such as inmate-on-inmate assaults";

4. "Defendant Dix[]on is an internal affairs sergeant . . . . responsible for investigating inmate-on-inmate assaults, maintaining and providing inmate safety and security, investigating and responding reasonably to transgender inmate[] complaints of assaults and threats, and reasonably responding to emergency request[s] and

3

<blockquote>
<ol start="4">
<li>situation[s], and protecting inmates[,] including [those that are] transgender[,] who have been threaten[ed] or assaulted.";</li>
<li>"Defendant Garcia is a major" who supervises "prison sergeants, Lieutenants, Captains, and officers and staff" and "is responsible for maintaining inmate safety and security, and investigating and responding reasonably to inmate complaints of assaults and threats, and reasonably responding to emergency request[s] and complaints of inmates, and protecting inmates[,] including [those that are] transgender[,] who have been threaten[ed] or assaulted";</li>
<li>Defendant Andrews "is the Warden of Treatment" and "responsible for the daily conditions and operations[,]" "supervising prison officers, staff, and inmates[,]" "maintaining inmate safety and security[,]" "investigating and responding reasonably to inmate complaints of assaults and threats," "reasonably responding to emergency request[s] and complaints of all inmates, and . . . protecting inmates[,] including transgender [inmates,] who have been threaten[ed] or assaulted." Defendant "Andrews is also a final policymaker for the [NECX]."</li>
</ol>
</blockquote>

[*Id.* at 3–5].

On December 22, 2022, Plaintiff reported to Defendant Tresslor that she "had been threaten[ed] because of being transgender and having the physical features of a female," and that this occurred in Unit 7, which is "a known disciplinary and gang unit" where she was housed even though she had no disciplinary write ups and "was a minimum custody inmate" [*Id.* at 6–7]. Plaintiff specifically told Defendant Tresslor that she had been threatened regarding her use of showers and phones, and that after Defendant Tresslor said she could shower during count time for safety, an unspecified inmate told her that "if the rockman had to be locked down because of '[her] b[*]tch punk ass" during count while she showered[,] [] she would be smashed and would have to go to protective custody" [*Id.* at 7]. Plaintiff asked Defendant Tresslor to move her [*Id.*].

In response, Defendant Tresslor told Plaintiff that he was going on Christmas break and would move her when he got back, if she "stayed out of trouble" [*Id.*]. Defendant Tresslor also asked "if Plaintiff wanted him to put her commissary in his office" [*Id.*].

4

However, on that same day, Inmate Coleman, who was also housed in Unit 7, "brutally assaulted" Plaintiff because she is transgender [*Id.* at 6]. Inmate Coleman hit Plaintiff in her left eye and temple with batteries tied up in a sock, leaving Plaintiff stunned and "unconscious for several minutes," at which point Inmate Coleman took her fan and some of her commissary [*Id.*]. The next day someone entered Plaintiff's cell when she was not there and took some of her commissary and her Christmas package [*Id.*]. Plaintiff claims that Defendant Tresslor was deliberately indifferent to her safety in a manner that caused Inmate Coleman's assault, and that this assault caused her various injuries [*Id.* at 8].

Plaintiff reported the assault to Defendants Odum and Mulvane "while the injuries were still fresh" and asked to be protected and moved away from Unit 7, but they did not take any action, and Defendant Mulvane told Plaintiff that she was "not moving" [*Id.*]. Plaintiff's family also called NECX and reported Plaintiff's "assault, threats, and situation" to Defendant Widner, who did not take any action [*Id.* at 9]. Plaintiff and another inmate approached Defendant Dixon and reported the assaults and threats to her, but she took no action [*Id.*]. Plaintiff also reported the assault and threats to Defendants Garcia and Andrews, who did not take any action [*Id.* at 9–10]. Additionally, Plaintiff reported the issues she was having to Clerical Officer Ms. Smith, who contacted Defendant Dixon. Dixon took no action [*Id.* at 10]. Plaintiff reported her situation to Officer Cornett in Unit 10 as well, and Ms. Cornett called mental health, who stated they could not talk to Plaintiff "unless it was [] life and death" [*Id.*].

On December 27, 2022, the day that Defendant Tresslor returned from his break, Defendant Tresslor moved Plaintiff to a different cell [*Id.* at 12].

On the day of Inmate Coleman's assault, Plaintiff placed an emergency grievance in the NECX grievance box explaining her situation. She received no response [*Id.* at 11]. Plaintiff then

5

refiled her grievance on January 23, 2022 [*Id.* at 11–12]. The response to Plaintiff's second grievance indicated that internal affairs found no reason to formally charge anyone for the assault, but that Defendant Garcia nevertheless moved Plaintiff, which Plaintiff states is inaccurate [*Id.* at 12–13]. In the portion of her complaint expressing disagreement with the factual basis for this grievance response, Plaintiff claims that Inmate Coleman was allowed to come from Unit 7 to Unit 10 on unspecified occasions after assaulting her [*Id.* at 13].

Plaintiff again summarizes her attempts to exhaust her administrative remedies before setting forth allegations that Defendants (1) were deliberately indifferent to a substantial risk to her safety through various prison practices, including understaffing, lack of supervision, failure to isolate inmates who threaten others, failure to separate violent inmates from vulnerable inmates, and failure to protect transgender inmates; and (2) failed to properly investigate the assault [*Id.* at 15–19].

Plaintiff sues Defendants in their official and individual capacities [*Id.* at 1, 3–5]. Plaintiff seeks declaratory relief, compensatory and punitive damages, a jury trial, payment of the costs of this action, and "[a]ny additional relief this [C]ourt deems just, proper, and equitable" [*Id.* at 20].

C. Analysis

1. Declaratory Relief

Plaintiff seeks declaratory relief in the form of "[a] declaration that the acts and omissions described [in her complaint] violated Plaintiff's rights under the Constitution" [*Id.*]. But Plaintiff cannot obtain declaratory relief for past harms. *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (providing that "[p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief. This is because the fact that a harm occurred in the past 'does nothing to establish a real and immediate threat that'

6

it will occur in the future, as is required for injunctive relief") (quotations and citations omitted). Plaintiff does not allege any facts from which the Court can plausibly infer that she is currently facing any threats that the requested declaratory relief can resolve. While Plaintiff does allege in her complaint that Inmate Coleman was allowed to come to the unit to which she moved after the assault on unspecified occasions, she does not set forth facts from which the Court can plausibly infer that she still faces any harm from Inmate Coleman or other inmates, nor does she seek relief on this basis.

As such, Plaintiff's request for declaratory relief is **DISMISSED**.

### 2. Official Capacity Claims

It is apparent from Plaintiff's complaint that all Defendants work for NECX, which is a prison facility that is part of the TDOC. https://www.tn.gov/correction/state-prisons/state-prison-list.html (last visited Sept. 29, 2023). By suing TDOC employees in their official capacities, Plaintiff is essentially suing the TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And because the TDOC is an arm of the State of Tennessee, suit against a TDOC employee in his or her official capacity is suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State").

However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of § 1983). Additionally, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the

state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot maintain suit against Defendants in their official capacities, and all such claims will be **DISMISSED**.

### 3. Individual Capacity Claims

#### a. Defendant Tresslor

Plaintiff's complaint plausibly infers that Defendant Tresslor was aware of threats against Plaintiff but failed to take action to protect her. Accordingly, the claims will proceed herein against Defendant Tresslor in his individual capacity.

#### b. Defendants Odom, Mulvane, Widner, Dixon, Garcia, and Andrews

Plaintiff's remaining claims arise out her allegations that Defendants Odom, Mulvane, Widner, Dixon, Garcia, and Andrews (1) did not remove her from the danger Inmate Coleman and/or other inmates posed to her after Inmate Coleman assaulted her; and (2) failed to investigate the assault after it occurred. However, only Plaintiff's request for relief in the form of monetary damages remains in this action, and as Plaintiff does not allege that she suffered any physical harm due to these omissions, that request for relief is not cognizable under § 1983. 42 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Wilson v. Yaklich*, 148 F.3d 598, 600–01 (6th Cir. 1998) (providing that claims seeking monetary damages for failure to protect in violation of the Eighth Amendment fail absent a physical injury that is more than *de minimis*).

Moreover, to the extent that Plaintiff seeks to hold these Defendants liable for the alleged theft of her property on the day after Inmate Coleman assaulted her, Plaintiff has not set forth any facts from which the Court can find that any Defendant knew of and disregarded any threat of theft of her commissary and/or other property. While Plaintiff states that Defendant Tresslor offered to place her commissary in his office prior to Inmate Coleman assaulting her, she does not state why he made this offer, or that she told any other Defendants about a threat of thefts to her. Nor is the Court aware of a constitutional provision that required Defendants to respond to any such threat of potential property loss.

Also, it does not appear that Plaintiff alleges that any Defendant personally stole her property. But to the extent that she makes such a claim, the United States Supreme Court has held that a random deprivation of property by a state employee does not violate the Due Process Clause of the Fourteenth Amendment, provided that the State makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981)*, overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate to remedy this alleged taking, as required to state a plausible constitutional claim based on the taking. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Additionally, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201).

Further, to the extent that Plaintiff seeks to hold these Defendants liable for the acts or omissions of Defendant Tresslor prior to the assault, Plaintiff has not set forth any facts from which the Court can plausibly infer that any of the remaining Defendants were personally involved in

9

those acts or omissions, and these Defendants cannot be liable under § 1983 solely based on a position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim).

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's request for declaratory relief is **DISMISSED**;

6. This action will proceed only as to Plaintiff's Eighth Amendment claim against Defendant Tresslor in his individual capacity for failure to protect, and all other claims and Defendants are **DISMISSED**;

7. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Tresslor;

8. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty (20) days of entry of this order;

9. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

10. Service on Defendant Tresslor shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

11. Plaintiff is **NOTIFIED** that if she fails to timely return the completed service packet, this action will be dismissed without further notice;

12. Defendant Tresslor shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant Tresslor fails to timely respond to the complaint, it may result in entry of judgment by default him; and

13. Plaintiff is **ORDERED** to immediately inform the Court and Defendant Tresslor or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

s/Clifton L. Corker<br>United States District Judge